DECISION
Plaintiff-appellant, State of Ohio, appeals from a judgment of the Franklin County Municipal Court granting the motion to suppress of defendant-appellee, Michael C. Turner. The state assigns a single error:
 THE TRIAL COURT ERRED IN FINDING THAT THE ARRESTING OFFICER WAS NOT JUSTIFIED IN STOPPING APPELLEE'S VEHICLE.
Because the trial court improperly granted defendant's motion to suppress, we reverse.
On November 21, 1999 at 1:28 a.m., State Trooper Lance S. Shearer, as part of a DUI task force, was driving eastbound on Bethel Road at the intersection of Bethel and Dierker Roads. Stopped at the intersection, he observed defendant make a right turn from northbound Dierker Road onto eastbound Bethel Road. Shearer stopped defendant and ultimately charged him with an improper right turn in violation of R.C. 4511.36(A), operating a motor vehicle while under the influence of alcohol and/or drugs of abuse in violation of R.C. 4511.19(A)(1), operating a motor vehicle with a prohibited breath alcohol content in violation of R.C.4511.19(A)(3), and a seatbelt violation contrary to R.C. 4513.263(B)(1).
Defendant responded with a motion to suppress, asserting various grounds in support of his motion. Following the state's reply, the trial court held an evidentiary hearing at which defendant agreed the sole issue was whether Shearer had a reasonable suspicion to stop defendant's car. At the conclusion of the hearing, the trial court found that, given "the totality of the circumstances, the date and time involved, the conditions of the roadway, the lack of traffic, and all other factors present * * * there is a lack of reasonable suspicion to stop defendant's vehicle under these circumstances." (Tr. 34.) The state's single assignment of error asserts the trial court erred in so concluding.
"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." State v. Curry (1994), 95 Ohio App.3d 93,96. Thus, a reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. State v. Claytor (1993),85 Ohio App.3d 623, 627. Nonetheless, the reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the appropriate legal standard. Id.
The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576. An investigative stop, or Terry
stop, is a common exception to the Fourth Amendment warrant requirement.Terry v. Ohio (1968), 391 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. InTerry, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, also, State v. Chatton (1984), 11 Ohio St.3d 59, 61.
A law enforcement officer properly may stop an automobile under theTerry stop exception. Delaware v. Prost (1979), 440 U.S. 648, 653,99 S.Ct. 1391, 59 L.Ed.2d 660; State v. Heinrichs (1988), 46 Ohio App.3d 63. Thus, an individual operating an automobile may be stopped if the officer possesses the requisite reasonable suspicion based on specific and articulable facts. State v. Gedeon (1992), 81 Ohio App.3d 617, 618. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. United States v. Cortez (1981), 449 U.S. 411,101 S.Ct. 690, 66 L.Ed.2d 621; State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
According to Shearer's testimony, he was eastbound on Bethel Road, waiting at the intersection of Bethel and Dierker Roads. At that intersection, he observed defendant in a motor vehicle in the right lane of the northbound lanes of Dierker Road. As he watched defendant, defendant turned onto Bethel Road, "actually straddled the center lane and went into the left lane as he was making his right-hand turn." (Tr. 8.) As Shearer explained, white passing lines were between the right and left lanes of eastbound Bethel Road onto which defendant turned. Shearer could see the right lane clearly and saw no debris, potholes, or obstructions which would cause defendant to make a wide right turn into the left lane or into the center. Moreover, defendant never turned into the right lane at any point, nor did he signal that he would go to the left lane.
On cross-examination, Shearer explained further: "[defendant] went into the center of the intersection and then turned right. In other words, as you're going along, you have a center line right, and he turned into the — in other words, if you would normally stay alongside the curb you would go straight into the right lane. He went straight into the intersection, then made his turn." (Tr. 16.) Shearer acknowledged, however, that defendant did not drive underneath the traffic light in the center of the intersection.
R.C. 4511.36(A) provides:
 The driver of a vehicle intending to turn at an intersection shall be governed by the following rules:
 (A) Approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.
Given the trooper's uncontradicted testimony, defendant's conduct constitutes a minor traffic offense in violation of R.C. 4511.36(A). Defendant turned from the right lane of Dierker Road and despite no obstructions preventing his turning onto the right lane of Bethel Road, defendant drove into the intersection and turned right over the center dividing line between two eastbound lanes of Bethel Road, ultimately ending up in the left lane. Without question, the absence of cars made defendant's violation considerably more innocuous then it might otherwise had been. Nonetheless, given the facts, Shearer's observations provided probable cause to believe defendant had violated R.C. 4511.36(A).
"The question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer." Dayton v. Erickson (1996), 76 Ohio St.3d 3, 6. "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer has some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity." Id. at syllabus; see, also, Gedeon, supra (officer validly stopped a car that was weaving within its lane, with the rear window covered with snow); State v. Shearer (Sept. 30, 1994), Portage App. No. 93-P-0052, unreported (officer executed a valid stop based on probable cause when a driver was following too closely in violation of R.C.4511.34).
In State v. Kuno (Nov. 6, 1997), Franklin App. 97APC04-497, unreported, this court reached a similar conclusion by noting the trial court erred in finding that a driver's de minimis marked lane violation was insufficient to justify stopping the vehicle:
 [W]hen a police officer observes a vehicle driving left of the centerline, that officer has witnessed what appears to be a violation of the law. As such, an officer would have a reasonable, articulable suspicion that a violation had occurred, i.e., that the driver improperly drove left of center, and would be in a position to stop that vehicle. The fact that the driver may have a reasonable explanation why he traveled left of center might be a defense to the charge. That fact would not negate the fact that the officer had reason to believe that the law had been violated.
See, also, State v. Owen (Oct. 19, 1998), Butler App. No. CA97-12-229, unreported (finding that officer was justified in executing a traffic stop on a wide left turn); State v. Strassman (Nov. 20, 1998), Athens App. No. 98CA10, unreported (concluding that defendant's crossing the yellow center line on two separate occasions is itself a violation of law and provides a reasonable suspicion necessary to effectuate an investigative stop).
Given the foregoing, the trial court erred in concluding Shearer lacked a reasonable articulable suspicion that defendant had engaged in activity which violates the traffic laws. Rather, the trooper's testimony provides a basis for finding probable cause that defendant had violated R.C.4511.36(A). Shearer thus properly could stop defendant without violating the constitutional prohibition against warrantless searches and seizures. The trial court erred in granting defendant's motion to suppress.
Defendant nonetheless contends that State v. Geisler (Aug. 30, 1985), Warren App. No. CA85-02-003, unreported, persuasively upholds the trial court's determination. In Geisler, the court concluded that a "slightly flawed right turn was not in and of itself enough to reasonably suspect that the driver * * * was driving under the influence of alcohol."Geisler is inapposite. The state does not contend defendant's improper right turn provides probable cause, or even a reasonable articulable suspicion, that defendant was driving under the influence or with a prohibited breath alcohol content. Rather, the state asserts defendant's wide right turn constitutes a violation of R.C. 4511.36(A), which in turn gave Shearer a justifiable basis for stopping defendant. From that stop, Shearer may have obtained additional indicia of intoxication which supported probable cause for issuing the citations under R.C. 4511.19(A). See State v. Terrell (Oct. 23, 2000), Clinton App. No. CA99-07-020, unreported. The trial court, however, did not address the issue of probable cause with respect to the R.C. 4511.19(A) charges, and we therefore do not. Instead, we sustain the state's single assignment of error, reverse the judgment of the trial court, and remand for further proceedings consistent with this opinion.
KENNEDY and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.